IN THE CHANCERY COURT FOR DAVIDSON COUNTY, TENNESSEE
AT NASHVILLE

| | |
|---|---|
| BETTY F. BOWERS, | ) |
| Plaintiff | ) |
| Vs. | ) Docket No: 10-1664-IV |
| COOK'S PEST CONTROL, INC. | ) JURY DEMAND |
| Defendant. | ) |

## COMPLAINT

Comes now the Plaintiff, BETTY F. BOWERS, widow of the late Ronnie L. Bowers (hereinafter referred to as MRS. BOWERS) and sues the Defendant COOK'S PEST CONTROL, INC. (hereinafter referred to as COOKS) by and through her attorney of record and alleges as follows:

## BACKGROUND INFORMATION

1. The late Ronnie L. Bowers died on May 8th, 2010 at the age of fifty-one (51). He had been employed by COOK'S from December 2, 2002 until March 12, 2010 when he was fired while in the intensive care unit of Vanderbilt Hospital of Nashville, Davidson County, TN. Mr. Bowers had been unable to work since October 28, 2009 due to numerous physical problems which resulted in his total disability. At the time of his death, Ronnie Bowers had accumulated over 1.5 million dollars in medical bills.

2. Mrs. Bowers is the WIDOW of the late Ronnie L. Bowers. She was his wife since October 3rd, 1985. This Plaintiff is 70 years old and works as a waitress to support herself and her autistic grandson.

EXHIBIT A

3. Upon information and belief COOK'S PEST CONTROL, INC. is an Alabama corporation licensed to do business in Tennessee with multiple offices in Tennessee.

4. Mr. and Mrs. Bowers were residents of Davidson County, TN and Mr. Bowers died in Davidson County, TN.

5. All contact with Mrs. Bowers regarding her late husband's insurance coverage took place in Davidson County, Tennessee.

6. Mr. Bowers' last day of work was October 28, 2009. At that time he was totally disabled and unable to work for COOK'S. In 2009 Mr. Bowers made numerous trips to the Emergency Room and was admitted to the Summit Medical Center on at least three (3) occasions, the last being on or about February 4th, 2010.

7. On February 6th, 2010 he was transferred to the Vanderbilt Medical Center Intensive Care Unit where he remained until he died on May 8th, 2010 at the age of 51.

8. Mr. Bowers' supervisor, Joel Kendzieski, visited Mr. Bowers a few days before March 11, 2010. After noting Mr. Bowers' serious condition in the Intensive Care Unit, Mr. Kendzieski called on the wife on March 11, 2010 and informed her that her husband was being terminated effective March 12, 2010.

9. On information and belief prior to Mr. Bowers' death, Mr. Kendzieski told David Bowers, brother of Ronnie L. Bowers, that Ronnie L. Bowers was eligible for two (2) weeks vacation pay and five (5) sick days for which he would be paid. Mr. Bowers never received payment for these two (2) weeks of vacation nor did he receive payment for the five (5) sick days he had accumulated.

10. On or about October 28, 2008 Dr. Kevin Meyers wrote COOK'S and informed them that Mr. Bowers was unable to continue working.

11. Upon information and belief, after hearing of Mr. Bowers' condition in the Intensive Care Unit and noting Mr. Bowers' poor prognosis, COOK'S terminated Mr. Bowers effective March 12th, 2010 to avoid Mr. Bowers' eligibility for a waiver of premiums and other benefits given to employees as it was clear that Mr. Bowers would be totally disabled for an indefinite period of time.

12. On March 12th, 2010 COOK'S allegedly sent Mrs. Bowers a mailing that covered numerous items and benefits information. COOK'S claims that a letter advising her that she had thirty-one (31) days to apply in writing for a conversion of her husband's Group Life coverage.

13. Mrs. BOWERS never received the March 12th, 2010 letter which allegedly informed her of the 31 day conversion window and told this to an employee of COOK'S, Becky McCaghren. On May 13th, 2010 or five (5) days after the death of Mr. Bowers, COOK'S sent a replacement letter which COOK'S claims was in the mailing that was mailed to the Mrs. BOWERS on March 12th, 2010.

14. The Plaintiff Bowers alleges that the only conversation and correspondence she had with COOK'S management involved the continuance of her medical insurance coverage through COBRA.

15. COOK'S has taken the position that Mr. Bowers' $60,000.00 coverage is in doubt yet they can not prove that the Mrs. BOWERS ever received the alleged March 12th, 2010 Termination of Life Insurance letter nor can they prove that they attempted to contact the Mrs. BOWERS regarding her husband's insurance coverage prior to the 31

3

day period in which she allegedly had to apply in writing to convert her husband's life insurance coverage.

16. Mrs. BOWERS alleges that her husband's presence in the Intensive Care Unit at Vanderbilt, since February 6th, 2010 until his death on Mary 8th, 2010 coupled with his poor prognosis, is convincing evidence that had she been actually advised in a letter dated March 12, 2010 that her husband's life insurance coverage would lapse unless converted, she clearly would have opted to convert her husband's life insurance policy.

## COUNT I - BREACH OF CONTRACT

The Plaintiff adopts the allegation contained in paragraphs 1 through 16 and further alleges as follows:

17. On September 5th, 2008 Mr. Bowers applied for Basic Life and Disability insurance coverage. He also applied for an additional fifty thousand dollars ($50,000.00) naming his wife, Betty Fay Bowers, as his sole beneficiary.

18. On October 1, 2008 his enrollment form was signed by "Becky McCaghren" as COOK'S "Authorized Signature.

19. Upon information and belief the Plaintiff (Mrs. BOWERS) believes that her husband was covered for a total amount sixty thousand dollars ($60,000.00) at the time of his death.

20. On page 8.0 of the Group Life and Accidental Death and Dismemberment Insurance Program, the following verbiage appears under the heading:

### *WAIVER OF PREMIUM IN EVENT OF TOTAL DISABILITY*

*We will extend the Amount of Insurance during a period of Total Disability for one (1) year if:*

4

(1) you become totally disabled prior to age 60;
(2) the Total Disability begins while you are insured;
(3) the Total Disability begins while the Policy is in force:
(4) the Total Disability lasts for at least 6 months;
(5) the premium continues to be paid; and
(6) we receive proof of Total Disability within one (1) year from the date it began.

## COUNT II - BREACH OF THE TENNESSEE CONSUMER PROTECTION ACT

The Plaintiff adopts the allegations contained in paragraph 1 through 20 and further alleges:

21. Mrs. BOWERS alleges that she has suffered an ascertainable loss of money as a result of the use by COOK'S of an unfair or deceptive act **as codified in TCA 47-18-101 et sequitur.**

22. The Plaintiff alleges that pursuant to TCA 47-18-109 (a)(3) that the use or employment by COOK'S of the unfair act or practice was a willful or knowing violation of this part of the statute and therefore merits an award of three (3) times the actual damages sustained by the Plaintiff.

23. The Plaintiff BOWERS alleges that due to the deceptive practices as evidenced by their refusal to pay the beneficiary of sixty thousand dollars ($60,000.00) this entitles the Plaintiff to receive prejudgment interest computed from May 8th, 2010 the date of the passing of Mr. Bowers, the insured.

24. The Plaintiff pursuant to TCA 47-18-109(e) (1) avers that the actions of the Defendant are such that the Court should award her reasonable attorney's fees and costs of this litigation.

5

25. The Plaintiff BOWERS alleges that she never received a written notice of the 31 day limit for conversation for the life insurance policy until she received a duplicate copy which was mailed on May 13, 2010.

26. Furthermore, the Plaintiff alleges that something as important as a termination of $60,000.00 life insurance benefits should have been sent by Certified Mail, Return Receipt Requested in its own envelope as simply a good business practice.

27. The timing of Mr. Bower's supervisor's visit to Vanderbilt Hospital and the subsequent termination of Mr. Bowers employment on March 12, 2010 is de facto evidence of the Defendant COOK'S bad faith in violation of the Tennessee Consumer Protection Act.

28. When it became apparent to the Plaintiff, Mrs. BOWERS, that her husband was going to die, she called the Lebanon Tennessee office where Mr. Bowers worked and spoke with a lady in the office named "Geraldine". Mrs. BOWERS asked Geraldine the amount of Ronnie's life insurance coverage.

29. Geraldine told Mrs. BOWERS that she did not know the amount of life insurance coverage but it was more than likely only ten thousand dollars ($10,000.00).

30. As proof of COOK'S bad faith in violation of Tennessee Consumer Protection Act no one from COOK'S ever told Mrs. Bowers that her husband had taken out supplemental insurance of fifty thousand dollars ($50,000.00) making a total of $60,000.00 in coverage. She later learned of the actual amount from her attorney long after her husband's death.

## COUNT III – BREACH OF FIDUCIARY DUTY

The Plaintiff adopts the allegations made in paragraphs 1 through 30 and further alleges as follows:

31. Mrs. BOWERS alleges that COOK'S was in a fiduciary position and was obliged to take whatever steps were necessary to protect Mr. Bowers wife and allegedly mailing a termination notice in an envelope along with several other writings violated COOK'S fiduciary duty to the Plaintiff.

32. As a sound and compassionate business practice, an employee of COOK'S should have called the Plaintiff, Mrs. Bowers and personally informed her of the alleged pending insurance coverage cancellation and personally explained the consequences to the Plaintiff.

33. The Plaintiff further alleges that something as important as life insurance conversion should have been sent in its own envelope by certified mail-return receipt requested. As a consequence, the Defendant COOK'S can not prove that Mrs. Bowers ever received a letter regarding her husband's life insurance coverage.

7

**NOW HAVING FULL PLEDGED**, the Plaintiff requests the following relief:

1. A money judgment in the amount of sixty thousand dollars ($60,000.00).

2. An additional money judgment in the amount of $120,000.00 for the Defendant's willful violation of the Tennessee Consumer Protection Act.

3. An additional money judgment for two (2) weeks vacation pay and five (5) days of sick pay.

4. That this Court award the Plaintiff pre-judgment interest dating back to the death of Ronnie L. Bowers on May 8, 2010.

5. That this Court award the Plaintiff her reasonable attorney's fee.

6. That the costs of this cause be taxed against the Defendant, COOK'S.

7. That a jury be impaneled to try the factual issues in this cause.

8. For any and all further relief that this Court finds appropriate.

Respectfully submitted,

*Vincent Zuccaro*
Vincent Zuccaro, #7321
Attorney at Law, P.C.
Attorney for the Plaintiff, Betty F. Bowers
3326 Aspen Grove Drive, Suite 504
Franklin, TN 37067
(615) 771-7770

8